JOHN BASKIN and WILLIAM R. BASKIN, executors, &c., Appellants, *v.* JAMES BASKIN and others, Respondents.

(GENERAL TERM, FOURTH DEPARTMENT, JANUARY, 1871.)

A special administrator has no authority to make investments.

It is his duty to deposit the funds of the estate with a solvent bank, or other institution which receives deposits, subject to demand, and he may receive interest thereon from the depositary.

A deposit payable after a certain time is a loan, for which on failure of an authorized depositary, the special administrator is liable. This last rule applies to executors and administrators.

Executors and administrators and special administrators are alike liable for loss of moneys of the estate, deposited by them in their individual capacities.

Executors, who receive as assets from a special administrator, certificates of deposit of moneys of the estate with an authorized depositary, made payable to such administrator, individually, upon time, assume the risks of the latter to the estate in respect thereof, and are liable, as he would be, for loss happening from the failure of the depositary.

Evidence is not admissible on behalf of the executors in such case, to show the character in which the special administrator turned over the certificates ; nor to show the amount of moneys of the estate previously deposited with the same depositary. Nor where they have deposited moneys in their individual capacities, upon time, may they show their good faith to excuse themselves from loss on account thereof.

THIS was an appeal from a decree of the surrogate of the county of Yates, on the final settlement of the accounts of the appellants, as executors of William Baskin, deceased. The decree was entered February 24, 1870, upon a petition for a final accounting and settlement presented November 17, 1868 ; and also upon a further petition of August 9, 1869, presented after the proofs had been, on the 21st June, 1869, closed on the first hearing. The facts are sufficiently stated in the opinion of the court.

*Charles G. Judd,* for the appellants.

*D. B. Prosser,* for the respondents.

Present—MULLIN, P. J., JOHNSON and TALCOTT, JJ.

MULLIN, P. J.  On the 7th January, 1866, William Baskin died, leaving a last will, wherein and whereby he appointed the appellants executors thereof.  The will was proved and letters testamentary issued to the appellants on the 19th of July, 1867.  Between the time of the death of the testator and the issuing of the letters to the executors, N. Raplee was appointed special administrator, and as such filed an inventory of the property of the deceased that came into his hands as such special administrator.  In the inventory thus filed were included, amongst other things, three certificates of deposit in J. T. Raplee's bank, as follows : 1. One dated on 9th May, 1866, for $520, payable in six months after date, with interest at four per cent per annum.  2. A certificate of deposit in the same bank, dated May 19, 1866, for $700, due six months from date at same rate of interest.   3. A like certificate dated May 19, 1866, for $12,921.55, payable in six months at same rate of interest.

It does not distinctly appear by whom these deposits were made ; but it would appear by the testimony of J. T. Raplee, the banker with whom these moneys were deposited, that before as well as after the death of the testator, the persons named as executors in the will, deposited considerable sums of money in the bank, and received therefor certificates of deposit ; but whether they were payable on time or on demand does not appear, nor does it appear whether or not the moneys belonged to the estate.  I do not find any evidence that the special administrator deposited moneys of the estate, and took therefor certificates payable on time, except this, that in the inventory filed by the executors, there are embraced four certificates of deposit in Raplee's bank, as follows: one dated 18th February, 1867, for $1,348.96, with four per cent interest, but when payable does not appear. 2. A like certificate for $200, dated 11th March, 1867, with like interest.   3. A like certificate for $1,730.17, dated 1st June, 1867, with same interest.   4. A like certificate for $2,000.93, dated June 1, 1867, payable six months after date, payable to N. Raplee or order, and indorsed by him to

John and William R. Baskin, who are the persons named in the will as executors. These deposits would appear, therefore, to have been made while the property was in charge of the special administrator, but whether by him or by the persons named in the will as executors is not certain. What evidence there is in the case would seem to show, that the executors, John and William R. Baskin, made the deposits in their own names.

Between the date of the executors' inventory and the final accounting all their certificates had been paid, surrendered or renewed, except the last one above described. The executors applied to the surrogate for a final accounting, and such accounting was had, and in that accounting the executors were charged with the certificates above mentioned. Before the decree was entered Raplee's bank became insolvent, and the certificates of deposit of little or no value.

The executors then presented a petition to the surrogate, alleging, amongst other things, that they had been charged with the certificate of deposit, the insolvency of Raplee, and praying that the accounting be opened, and they credited and allowed for the amount so lost. After hearing the parties the surrogate denied the prayer of the petition, and they were decreed to distribute amongst the legatees, the amount represented by those certificates; and from that decree, or order, the executors appeal.

On the hearing, under the last mentioned petition, the certificates, which the executors prayed to be credited with, were the one of June 1, 1867, for $2,000.93, and another dated 25th of March, 1869, for $1,600.32, payable to the order of John Baskin, six months after date, at four per cent interest.

It is thus established that one of the deposits, represented by the certificates, was made by N. Raplee, the special administrator in his own name, and in his own right, and delivered by him to the executors, and that the other was made by William R. Baskin, one of the executors in his own name, after the executors came into possession of the assets.

Baskin *v.* Baskin.

The ground on which the executors ask to be relieved from paying over the money represented by their certificates, is, that they were deposited in the usual course of business, in a solvent bank, and that they are not chargeable with the loss sustained by the insolvency of such bank.

The deposits being in part made by N. Raplee, while he was special administrator, and in part by one of the executors, makes it necessary to consider the question of liability in reference to each, as each is governed by somewhat different rules.

A special administrator or collector, as he is sometimes called, takes the assets charged with the duty of preserving them, and collecting in the demands due to the testator at the time of his death, and is bound to file an inventory, and account for the property received by him, and to deliver over the assets to the person or persons entitled to receive the same from him. He has no authority to make investments, nor to dispose of the assets, otherwise than as above specified. He is, therefore, a mere trustee, for the benefit of the persons entitled and responsible as such.

A special administrator, being himself a mere depositary charged with keeping safely the moneys belonging to the trust, may, and it is his duty to deposit such money with some solvent bank or other institution that receives money on deposit, in order that it may be kept safely, and paid over promptly to the person entitled by law to receive the same. This duty forbids investment, and of course involves the loss of interest, unless the depositary will pay interest, and yet refund the moneys on demand, as trust companies and savings banks sometimes do.

If the deposit is thus made, and the bank fails, the special administrators would not probably be liable for the loss.

But if instead of thus depositing, he loans the money on time, and especially if he loans it on personal security, he is liable for the moneys which may be lost by reason of the insolvency of the lendee. (Hill on Trustees, 378, marginal paging, and note 1; Dayton on Surrogates, 482.)

These deposits were made by the administrator and the executors, not in their representative characters, but in their individual names; and in such case the rule is well settled, the trustee must bear the loss resulting from the failure of the depositary. (Hill on Trustees, 376.)

Conceding that Raplee was a banker, and his bank a proper place to deposit trust-money in, yet a deposit made under an agreement to pay in six months or after the lapse of any other number of months rendered the transaction a loan upon time, and such a loan imposed the risk of loss upon the special administrator. (Hill on Trustees, and note, *supra*.)

When the executors received these certificates of deposit from the special administrator, they received them upon their own personal responsibility, as they could not, by any arrangement between them and the special administrator, convert into assets the proceeds of an illegal and unauthorized transaction of the special administrator. As well might they have taken his note for moneys improperly appropriated by him, and then attempted to make it assets.

But, if it was assets, it was the duty of the executors to use diligence in collecting it. They received it about the 27th July, 1867, and held it, without any attempt to collect, down to the time of the failure of the bank, the 27th July, 1869, a period of two years.

The surrogate has found the delay unreasonable, and, being so found, it was a breach of duty, and makes the executors liable for the loss resulting therefrom. (*Schultz* v. *Pulver*, 11 Wend., 361; Dayton on Surrogates, 481.)

The deposit made by the executors themselves, being on time, was a loan, for which they are responsible. (See cases cited *supra*.) The reasons which rendered the special administrator liable apply to them, and they must make good the loss sustained by the breach of duty.

The exceptions by appellant's counsel to the rejection of evidence offered by him are not well taken. The first offer was to show that one of the certificates of deposit was delivered by the special administrator to the executors. This fact

appeared from the inventory of the executors. The deposit was made before the letters were issued to them, and was made by N. Raplee, who was the special administrator. But it does not appear that the certificate was transferred by him in his representative character, nor could it have been because it was made in his own name, and the certificate was payable to his own order. I have assumed the transfer was made by the special administrator, and yet the appellants are nevertheless liable.

The next offer was, to prove the amount held by Raplee's bank on deposit in 1867. It is wholly immaterial, the amount deposited in said bank, as neither the special administrator nor the executors ever deposited any moneys therein in their representative character. They loaned money to the bank in their individual characters, and such loan was a breach of trust.

The next offer was to show the purpose for which one of the executors let Raplee have the money. The certificate declares the purpose. It is in the form of a contract, and cannot be varied, even as between third parties, the contract itself being the breach of duty, for which the executors are sought to be charged. Their good faith cannot avail them against a plain breach of trust.

There was allowed to William B. Baskin, on the accounting, $300, for his care of and his attendance upon his father during the last years of his life.

The respondents object to the allowance of this item, on the ground that it appears by the repeated admissions of the claimant that the services were to be rendered to his father without compensation. The charge rests mainly on the evidence of the claimant. The surrogate has rejected numerous items of account supported by the oath of the claimant, thus showing a want of confidence, as it is claimed, in his statements, and these being held to be unworthy of credit as to such items, ought not to be relied on as to the one in question.

There was, however, a conflict of evidence in regard to the claim allowed; and the evidence as to the claims disallowed

may have been such as to justify their rejection, without rendering the claimant wholly unworthy of belief.

It does not appear that the claim was allowed against the evidence.

The decree of the surrogate must be affirmed, with costs, to be paid by the appellants personally.

Decree affirmed.