BUMSTEAD *v.* SANDERS *et al.*

(*Supreme Court, General Term, Third Department. July 11, 1891.*)

LIABILITIES OF GUARDIAN—TAKING POSSESSION OF ESTATE—WORTHLESS SECURITIES.

> The trustee of a certain fund, wherein the trust had determined, and whereof plaintiff was entitled to one-half, had partly invested the same in a second mortgage, which he delivered to defendant, plaintiff's guardian, together with other securities, as plaintiff's half of the fund. There had been an action for the construction of the trust, and the complaint showed that the trust fund was partly invested in such second mortgage. The mortgaged property when sold produced only enough to satisfy the first mortgage. *Held*, in an action to charge the guardian with the loss, that he properly took from the trustee the securities which belonged to the fund, and was not liable for the worthlessness of a part thereof.

Appeal from circuit court, Rensselaer county.

Action by Amelia H. Bumstead, an infant, against Walter T. L. Sanders and others. From a judgment for defendants, plaintiff appeals.

Argued before LEARNED, P. J., and LANDON, J.

*Lansing & Cantwell, (James Lansing,* of counsel,) for appellant. *Townsend, Roche & Nason, (Martin J. Townsend,* of counsel,) for respondents.

LEARNED, P. J. It was decided by this court in the case of *Sanders* v. *Bullard,* (Albany, May, 1883,) that on the death of Henry Bumstead, December 25, 1872, the trust created for his life by the will of the testator ceased. It was adjudged by the special term, December 6, 1873, in *Bullard* v. *Bumstead,* that on the death of Henry Bumstead half of the fund of $10,000 held in trust for him vested in Amelia H., the present plaintiff, but that, in case Henry D. Bumstead should have other children, such children should be at liberty to apply to the court, if so advised, for a share of said $5,000. Subsequently to the making of the last decision, and in January, 1874, the father of Amelia H. petitioned the court, and stated that she had no general guardian, and asked the appointment of some person as trustee to take care of her interests. The court did thereupon, on the 4th day of January, 1874, appoint the present defendant trustee of said trust fund of $5,000. As we remarked in the opinion above referred to, we do not know of what trust the defendant was appointed trustee, since the trust under the Bumstead will ceased December 25, 1872. He was not the successor of the trustee of that original trust. It would seem as if his appointment was

that of a guardian of Amelia H., with perhaps some reference to the suggestion in the order of December 6, 1873, that other children of Henry D. might, if any, and if so advised, apply to the court for a share in the fund. At the time of the commencement of the action of *Bullard* v. *Bumstead* it appeared by the complaint therein that the $10,000 were invested in bonds and mortgages held by the then trustee which he was ready to deliver to the party entitled; and it was in respect to the fund thus invested that the judgment therein was made, and that thereafter the appointment of defendant was also made. The defendant accepted the appointment, and thereupon received from the trustee of the original trust (which had then expired) a mortgage of $3,000, on which accrued interest of $577.50 had been capitalized, and $1,500 in cash, or its equivalent. The mortgage was a second mortgage, and on a foreclosure of the first, in September, 1880, the property brought practically only enough to pay the first mortgage and costs. This action is brought for an accounting. The court held the defendant liable for the $1,500, about which there is no question, but did not hold him liable for the $3,000. The plaintiff appeals. The ground of the plaintiff's claim is the alleged misconduct of defendant in accepting from Bullard, trustee, the $3,000 mortgage. We may assume for the present that the investment in that mortgage was one which Bullard, as trustee, ought not to have made. The question is, did the defendant do wrong in taking it ?

It is to be observed that the investment had been made long before the defendant had anything to do with the property. The bonds and mortgage were made specifically to Thomas J. Bullard, as trustee for Henry Bumstead. They were therefore a part of the trust property at the time when defendant was appointed, and the complaint in the judgment roll, to which we have above referred, showed that fund was invested in bonds and mortgages. Now, in this state of affairs, it was the duty of the defendant to take the securities which belonged to the fund. If he had neglected to do so, and had assumed instead to sue the administrators of Thomas J. Bullard, then deceased, the former trustee, he would have assumed a very serious risk. If he could have maintained such an action, (a point we need not decide,) the estate might have been unable to pay, and thus he might have greatly injured his trust property.

There is still another consideration. In the action above mentioned of Thomas J. Bullard, trustee, this present plaintiff was a party defendant. Before the decision in that action Thomas J. Bullard died. Of course, his duties then ended. In fact, the trust had ceased before the action was commenced. Hence the accounts of said deceased trustee could have been passed in that action; and the present plaintiff could have had a settlement, and could have charged the estate of said deceased trustee as might have been proper.

But the plaintiff insists that, notwithstanding the trust-estate had been actually invested in this bond and mortgage, the defendant was not bound to take it, but could have required the administrators of the deceased trustee to pay him cash. He cites *Ormiston* v. *Olcott*, 84 N. Y 339, to sustain this proposition. In that case one of two trustees—the one who had managed the estate—died. None of the trust property had been kept distinct, but it had all been practically absorbed in the estate of the deceased trustee; so that it stood simply as a debt from his estate. In this situation the surviving trustee took from the estate an Ohio mortgage, which in the end appeared to be of doubtful value. The general term thought the acceptance of that mortgage was not justifiable. 22 Hun, 270. But the court of appeals held otherwise; refused to hold the defendant liable, and decided that the action of the trustee did not come under the rule which forbids a trustee to make a foreign investment. Now, it is evident that the action of the trustee in that case was far less justifiable than that of this defendant. In that case the defend-

ant was one of the original trustees. Here he is not, and is not even a suc-
·cessor in the trust. In that case there were no securities specifically belong-
ing to the trust, and the defendant could have demanded cash. Here there
was a specific investment, which it would be hazardous to reject. In that
case the trust was still existing. Here it is ended, and the estate has vested
in the plaintiff. In that case, too, as was held by the general term, the estate
of the deceased trustee was solvent. The court of appeals said they were
not certain of this, but did not find the contrary. But they point out the
difficulty and delay of attempting to collect the claim from the estate. All
that difficulty exists here, with the further obstacle that an actual and specific
investment had been made and was held by the estate of the deceased trustee.
This circumstance would make still more difficult the recovery of money from
the estate. The decision in *Re Foster*, 15 Hun, 387, if applied to the present
case, would show that the estate of Thomas J. Bullard is liable to the pres-
ent plaintiff. It does not in the least show this defendant is liable. In that
case a trustee had resigned and been discharged, and passed the securities to
his successor. Some of these securities which he had taken were unauthor-
ized. The *cestui que trust* was allowed to maintain a proceeding against such
former trustee to set aside his discharge, and to compel him to make good the
improper investments, which had subsequently proved worthless. It is ap-
parent that that case is directly in point to sustain an action by the present
plaintiff against the estate of Thomas J. Bullard, but by implication, at
least, is opposed to a recovery in this case. Nor does the case of *Baskin* v.
*Baskin*, 4 Lans. 90, sustain the plaintiff. A special administrator had col-
lected money and deposited it in a bank, taking a certificate payable in six
months, with interest. The executor received that certificate, and did not
attempt to collect it until the failure of the bank, eighteen months after the
certificate became payable. They were held liable, as negligent in not col-
lecting a loan. Under the decision, then, the defendant was not liable for
taking this bond and mortgage. Nor do we see that subsequent neglect has
been shown. The defendant, by the same counsel who now represents the
plaintiff, sued the administrators of Thomas J. Bullard in February, 1882, to
recover for the loss on this investment; but he was defeated. It has been
shown above, from the decision of December, 1873, that the half of the es-
tate invested in the plaintiff, and by *In re Foster*, that she can sue the admin-
istrators of Thomas J. Bullard for injury sustained by her. If the defendant
is really her guardian, though nominally trustee, the plaintiff urges that as
such guardian he might have brought such an action. *Perkins* v. *Stimmel*,
114 N. Y. 359, 21 N. E. Rep. 729, cited by plaintiff, does not sustain that
view, and we think it is not supported by the best authorities. *Bradley* v.
*Amidon*, 10 Paige, 235; *Segelken* v. *Meyer*, 94 N. Y. 473. Certainly it is not
so plain as to make defendant liable in damages for not acting thereon, when
the plaintiff herself might bring the action in her own name. Judgment af-
firmed, with costs.