## Case No. 11,026.

### PETERKIN v. NEW ORLEANS.

[2 Woods, 100; [1] 22 Int. Rev. Rec. 11; 23 Pittsb. Leg. J. 90.]

Circuit Court, D. Louisiana. Nov. Term, 1875.

MUNICIPAL CORPORATIONS — SEIZURE OF TAXES AND REVENUES ON EXECUTION— BANK DEPOSITS.

1. The taxes and public revenues of a municipal corporation cannot be seized on execution by its creditors. although the corporation is in debt and has no means of payment except the taxes which it is authorized to collect.

2. Neither the place nor manner in which the revenues of a municipal corporation are kept divests them of their public character or subjects them to be diverted, at the suit of creditors, from the purposes for which the law authorized 'them to- be collected.

3. Such revenues are protected from seizure or attachment by creditors. although they may have been deposited in a bank for safe keeping, and the bank has thereby become the debtor of the corporation for the amount so deposited.

[Cited in New Orleans v. Morris, Case No. 10,182.]

4. An act of the legislature required a municipal corporation to levy each year a special tax sufficient to pay the annual interest on certain of its designated bonds: *Held*, that the act authorized and required the levy of a tax to pay interest after the maturity of the bonds as well as before.

Heard on motion to dissolve attachment. The plaintiff [W. S. Peterkin] being the holder of certain bonds issued by the city of New Orleans in aid of the Opelousas Railroad and of the Jackson Railroad, and the bonds having become due and remaining unpaid, had reduced the same to judgment in this court. In pursuance, as it is claimed, of the original act which authorized the issue of the bonds, the city had levied a tax to pay the interest thereon, and a fund for this purpose, amounting to $105,000, had been deposited by the city in the Louisiana National Bank. It was deposited in the bank to the credit of the fund for the payment of the interest on the bonds, but was not sufficient to pay the interest on all the bonds. The plaintiff having, as stated, recovered a judgment both for the principal and interest due on his bonds, had attached this fund and served notice of garnishment upon the Louisiana National Bank. The motion was to dissolve this attachment.

B. F. Jonas, City Atty., for the motion.

T. J. Semmes, contra.

WOODS, Circuit Judge. It is claimed in behalf of the city that the taxes and public revenues of a municipal corporation cannot

---

[1] [Reported by Hon. William B. Woods, Circuit Judge, and here reprinted by permission.]

be seized under execution against it, and that the doctrine of the inviolability of the public revenues by the creditor is maintained, although the corporation is in debt and has no means of payment but the taxes which it is authorized to collect. Dill. Mun. Corp. § 64; Egerton v. Third Municipality, 1 La. Ann. 435; Third Municipality v. Hart, 6 La. Ann. 571. This, as a general rule, is conceded; but it is claimed that the circumstances of this case make it an exception.

1. It is said that the city having deposited this money in a bank, the bank has thereby become the debtor of the city, and the fund has lost its distinctive character as· public revenue and become simply a debt due the city from the bank, and subject to garnishment by any creditor of the city. In support of this view the cases of Stetson v. Gurney, 17 La. 162, and Norris v. Hero, 22 La. Ann. 605, are cited, where it is held that money deposited in a bank by an agent in his own name cannot be identified, and becomes a debt due the depositor from the bank, and is not a debt due the principal.

This argument applies to all the funds of the city raised by taxation for all purposes. So that if we give this theory full force, it follows that whenever a municipal corporation, either from necessity or as a matter of convenience, deposits its revenues in a bank to be drawn upon for public uses, no matter to what purpose appropriated, they are liable to be seized by its creditors; that funds for feeding prisoners, sustaining hospitals, lighting the streets, keeping a supply of water for the extinguishment of fires, paying the police, etc., are all subject to be appropriated by any enterprising creditor who chooses to make the necessary effort. If funds raised for the payment of interest can be seized because the city has deposited them in a bank, it follows ·that funds raised for any of the other purposes named may also be seized. I do not think the manner or place in which the public revenues of a municipal corporation are kept divests them of their public character, or subjects them to be diverted from the purposes for which, and for which only, the law authorized them to be collected. In my judgment. a municipal corporation stands in a different plight from an individual in such a case. The officers of a city charged with the execution of a great public trust, on which depend the comfort, safety, lives and property of the inhabitants, cannot, by the manner in which they keep the public revenues, subject them to seizure by the public creditors, and thus defeat the very purposes for which the municipal body was created. The fact, therefore. that the city made the Louisiana National Bank the depository of its public revenues, does not subject them to seizure and garnishment.

2. It is claimed that the law authorizing the city to issue the bonds held by plaintiff, only authorized the city to levy a tax to pay the interest thereon until their maturity; that

the fund attached was for interest on the bonds after maturity, and is therefore a property of the city which is not applicable by law to any specified purpose, and is therefore subject to seizure by any creditor who has a judgment against the city. But the law does not so read. It provides that "a special tax on real estate and slaves shall be levied in January of each year sufficient to pay the annual interest on said bonds, * * provided that no levy of a tax for the payment of interest on said bonds shall be made after the payment of dividends of 6 per cent. per annum on the stock of the company held by the city." Under this act, the authority to levy a tax for the payment of the interest upon the bonds is just as clear, and the duty just as imperative, after the maturity of the bonds as before, unless the stock for which the bonds were issued pays dividends of 6 per cent., which is not and never has been the case. If the city refused to levy a tax for interest after the maturity of the bonds, I think a bondholder who had reduced his bonds to judgment might have the writ of mandamus to compel the city to levy and collect the tax. The collection of the money seized was, therefore, authorized by law. It was collected for a special purpose, and it cannot be diverted from that purpose by the vigilance and enterprise of the city's creditors. The officers of the city could be compelled by mandamus, at the instance of creditors having judgments on their bonds, to apply the funds so raised to the payment of interest pro rata on all the bonds of this class. It therefore follows that no single creditor has the right to seize the whole fund for his sole benefit and apply it to the payment of the principal as well as the interest of his debt. This fund must be applied to the purpose for which the law authorizes its collection, and no other. The attachment must therefore be dissolved.