# Chancellor *v.* Chancellor.

## *Final Settlement of Estate.*

(Decided February 1, 1912. Rehearing denied May 1, 1912. 58 South. 423.)

1. *Trusts; Deposit of Trust Funds as Trustee; Liability.*—Where a trustee deposits trust funds in a reputable bank to his credit as trustee in good faith, and with discretion, he is not liable for a loss occasioned by the failure of the bank; if he deposit the funds in his own name individually, he is liable for the loss, and the liability is not affected by his good faith, prudence or judgment, or by the fact that he may have disposed of his own funds in the same way.

2. *Executors and Administrators; Trust Estate; Deposit; Liability.*—Where an administrator deposits trust funds in a bank and takes a certificate of deposit therefor in his individual name, a loss resulting from the failure of the bank falls on him, notwithstanding the fact that he informed the bank at the time of the deposit that the funds belonged to the estate of which he was administrator.

3. *Same.*—The facts examined and held to show liability on the administrator for the loss of the trust funds by the failure of the bank.

APPEAL from Talladega Probate Court.

Heard before Hon. W. C. McMILLAN, Special Judge.

Petition of P. L. Chancellor, as administrator, for final settlement of the estate of his intestate. From a decree for petitioner, the contestant, I. S. Chancellor, one of the heirs of intestate, appeals. Reversed and remanded.

[Chancellor v. Chancellor.]

The administrator sought to have himself credited with an item of $1,223.45, and commissions thereon, which he had deposited in the Union Bank & Trust Company; he claiming to have deposited it as trust funds, and the contestant setting up that it was deposited by him in his individual capacity. The evidence was in conflict as to this matter, but the preponderance seems to be that the deposit was made in his individual capacity. The bank failed, and the administrator sought to excuse himself on this ground.

J. B. SANFORD, and D. H. RIDDLE, for appellant. A deposit by a personal representative or trustee of trust funds coming into his hands in his representative capacity to his individual credit is in law a conversion of such, rendering him and his sureties liable.—*Dittmar v. Bogle*, 53 Ala. 169; 29 Atl. 1050; 119 Ind. 593; 20 La. Ann. 148; 47 La. Ann. 126; 30 Pa. St. 536; 55 Wis. 300; 28 Pa. St. 480; 2 A. & E. Enc. of Law, 949. Without regard to negligence or intention the deposit of trust funds in a bank to one's individual credit renders the trustee liable.—*Ivey v. Coleman*, 42 Ala. 459; *Henderson v. Henderson*, 58 Ala. 582; *Dittmar v. Bogle, supra;* 12 Am. St. Rep. 311; 143 Mass. 226. Under these authorities, and under the facts in this case, the administrator and his bondsmen were liable for the loss on account of the failure of the bank. Any distributee has a right to contest any and all items of credit sought by an administrator, and a right to appeal from an adverse decision.—Sec. 2678, Code 1907; *Kirksey v. Kirksey*, 41 Ala. 626.

KNOX, ACKER, DIXON & SIMS, for appellee. The rule in Alabama has long been established that the appellate court will not review the finding of the probate court on

[Chancellor v. Chancellor.]

matters of facts in settlements of an estate, and will not reverse unless the verdict of the jury would be set aside by the court on legal principles.—*Kirksey v. Kirksey,* 41 Ala. 626; *Henderson v. Henderson,* 67 Ala. 519. It is proper for an administrator or trustee to deposit trust funds in a reputable bank for safe keeping, and if done in good faith and with discretion, he will not be liable for loss of the funds by a failure of the bank.—18 Cyc. 235 and 295; A. & E. Enc. of Law, (vol. 11) 947, 948, 952; *Knoff v. Jesse,* 109 N. W. 666; *Lehman-Durr & Co. v. Robinson,* 84 Ala. 489; *Boothe v. Dexter,* 118 Ala. 369. A case on all fours with this as to facts is that of *Atterbury v. McDuffie,* 31 Mo. App. 603. The appellant failed to follow the directions of section 2084, Code 1907, and Acts 1911, p. 589, and hence, could not jointly assign error.—*Dickens v. Dickens,* 56 South. 806; *Hillins v. Brinsfield,* 113 Ala. 304.

ANDERSON, J.—"A trustee may deposit money temporarily in some responsible bank or banking house; and if he acted in good faith and with discretion, and deposited the money to a trust account, he will not be liable for its loss, * * * but he will be liable for the money in case of a failure of the bank, or for its depreciation, if he deposits it to his *own credit,* and not to the separate account of the trust estate."—Perry on Trusts, § 443. Again, this writer says, in section 463: "So if the trustee pays the money into a bank in his own name, and not in the name of the trust, he will be responsible for the money in case of the failure of the bank." This general rule is not only recognized by our own court, but by all well-considered cases.—*Ditmar v. Bogle,* 53 Ala. 169; *Booth v. Dexter Co.,* 118 Ala. 369, 24 South. 405. Where an administrator or trustee, with trust funds in his hands, deposits them in his own name

[Chancellor v. Chancellor.]

in a bank or other institution which fails, the loss should fall on him. And his liability will not depend upon the good faith, prudence, or judgment with which apparently he may have acted, nor upon the fact that he may have disposed of his own funds in the same way. —*In re Arguello,* 97 Cal. 196, 31 Pac. 937; *Commonwealth v. McAlister,* 28 Pa. 480; *Williams v. Williams,* 55 Wis. 300, 12 N. W. 465, 42 Am. Rep. 708; *Naltner v. Dolan,* 108 Ind. 500 8 N. E. 289, 58 Am. Rep. 61; *Corya v. Corya,* 119 Ind. 593, 22 N. E. 3.

If the administrator deposits trust funds in a bank and takes therefor a certificate of deposit in his own name individually, the deposit is at his own risk, and the loss will fall on him in the event of a failure of the bank. Nor will the fact that he informed the bank at the time of deposit that the funds belonged to an estate of which he was administrator alter the liability.—*In re Hornor's Estate,* 66 Mo. App. 531. We are much impressed with the soundness of the well-considered case of *Naltner v. Dolan,* 108 Ind. 500 [8 N. E. 289, 58 Am. Rep. 61], and from which we quote: "The authorities, however, distinguish between cases in which the deposit was made in such a manner as to preserve its trust character on the books of the bank in which the fund was deposited, and those in which the owner of the fund might be put to the trouble of proving by extraneous evidence that the fund was not the individual money of his trustee. Whenever a trustee, unless properly authorized to do so, puts the fund in such shape as to invest himself with a legal title to it, the cestui que trust has his election, either to treat the fund, according to the appearance of things, as the property of the trustee, and regard the latter as his debtor, or he may demand that the title be transferred to him. If a deposit is made in such manner as, on the face of the books of the bank

in which the deposit is made, to authorize the trustee, his assignee, or legal representative, to claim it as the fund of the depositor, the cestui que trust has the option to do likewise.—*Merket v. Smith,* 33 Kan. 66 [5 Pac. 394]; *McAllister v. Commonwealth,* 30 Pa. 536; *Morris v. Wallace,* 3 Pa. 319 [45 Am. Dec. 642]; *Jackson v. Bank, etc.,* 10 Pa. 61; *School District, etc., v. First Nat. Bank,* 102 Mass. 174; *Utica Ins. Co. v. Lynch,* 11 Paige [N. Y.] 520; *Bartlett v. Hamilton,* 46 Me. 435; 2 Pomeroy, Eq. Jur. §§ 1067-1076; Perry, Trusts, §§ 443, 444; Story, Agency, § 208. In case it becomes the duty of an agent or trustee to deposit money belonging to his principal, he can escape the risk only by making the deposit in his principal's name, or by so distinguishing it on the books of the bank as to indicate in some way that it is the principal's money. If he deposited in his own name, he will not, in case of loss, be permitted to throw such loss on his principal.—*Williams v. Williams,* 55 Wis. 300 [12 N. W. 465], 42 Am. Rep. 708; *Norris v. Hero,* 22 La. Ann. 605; *Mason v. Whitthorne,* 2 Cold. (Tenn.) 242; *Jenkins v. Walter,* 8 Gill & J. (Md.) 218 [29 Am. Dec.] 539; *Robinson v. Ward,* 2 C. & P. 60; *McDonnell v. Harding,* 7 Sim. 178; *State ex rel. v. Greensdale* [106 Ind. 364, 6 N. E. 926, 55 Am. Rep. 753], supra. In such a case, the good faith or intention of the trustee is in no way involved. Having for his personal convenience, or from whatever motive, deposited the money in his own name, thereby vesting himself with a legal title, it follows as a necessary consequence, when a loss occurs, he will not be permitted to say, as against his cestui que trust, that the fact is not as he voluntarily made it appear. What the legal or equitable rights of the real owner of the fund would be in such a case, as against the bank, or as against attaching creditors of the depositor, has been the subject of much discussion,

[Chancellor v. Chancellor.]

and of some diversity of opinion.—*Pennell v. Deffell,* 4 DeG. M. & G. 372; *School District, etc. v. First Nat. Bank,* 102 Mass. 174; *Jackson v. Bank, supra; Bundy v. Town of Monticello,* 84 Ind. 119, 131, and cases cited; *McLain v. Wallace,* 103 Ind. 562 [5 N. E. 911]; *McComas v. Long,* 85 Ind. 549; *Ellicott v. Barnes,* 31 Kan. 170, 173 [1 Pac. 767;] Morse, Banks and Banking, 300-302. Whatever diversity of opinion may be found in respect to the rights of the bank, or other creditors of the depositor, the authorities agree that a trustee who either invests or deposits trust money in his own name, without in some way designating it as trust property, will be responsible for any loss that may occur to the fund while so invested or deposited.—*Gilbert v. Welsch,* 75 Ind. 557; 2 Leading Cases in Equity, 1805. Having put the owner of the fund to the hazard of losing it, or of maintaining its trust character by such proof aliunde as may be available to him, the trustee thereby gives the former the privilege of treating the latter as his debtor, or of supplying the proof, or accepting his admission of the facts, at his option."

This appellee insists that the deposit, while appearing upon the bank ledger and from the certificate of deposit to his individual credit, was in fact made by him as administrator; that the cashier knew that it was trust funds; and that he instructed him to make the deposit to him in his representative capacity. In the case of *Atterberry v. McDuffee,* 31 Mo. App. 603, an administrator was relieved of liability by showing that the entry of the deposit to his individual credit was an error; that it was distinctly shown that the money deposited was that of the estate; that the bank knew that fact, and the officers of the bank were instructed to make out a certificate of deposit *in the name of the executor;* that this direction was disobeyed by the bank without the knowl-

edge of the executor who put the certificate in his pocket. without giving it immediate examination, and who reported to the probate court that the funds of the estate were deposited in bank. Whether or not we would recognize the soundness of this case, we need not decide, as the facts do not clearly and distinctly bring this one within the protecting influence of same. Though we are disposed, however, to question the soundness of same, upon the idea that he should have examined the certificate of deposit or passbook, if he had one, and seen that the money was or was not deposited as he directed. The testimony of appellee is vague and uncertain as to whether or not he told the cashier to deposit the fund in his representative capacity and as to what was shown in the passbook. On the other hand, the cashier is positive that the administrator did not tell him to place it to his representative credit, and he is corroborated by the certificate of deposit and the entry in the bank ledger. The cashier also says the passbook given the appellee corresponded with the ledger and the certificate of deposit; therefore, in the absence of the passbook which was in the possession of the appellee, we must presume that it did correspond with the other entries. Having the passbook in his possession for several months before the failure of the bank, he either knew, or negligently failed to discover, that the fund was in his individual name, and it would be a dangerous and far-reaching holding to permit him at this late day, without producing the passbook, to overturn all the bank entries and the positive evidence of the cashier, by testimony to which he would not be positive and certain, upon cross-examination. The enforcement of the above rule has operated with harshness in many cases; but as was well said in the case of *Williams v. Williams,* 55 Wis. 300, 12 N. W. 465, 42 Am. Rep. 708: "To hold the administra-

[Chancellor v. Chancellor.]

tor answerable in this case is undoubtedly a great hardship, but to exonerate him from liability is to encourage the mismanagement of trust funds, and to open the doors to frauds innumerable against those whose age and weakness entitle them to the most rigid protection of the law. The rule should not therefore be slackened, even if the question were a new one, much less in view of the authorities cited." We may add that the trustee can protect himself by depositing funds in solvent institutions; but prudence should suggest and require that he be not alone content with giving instructions that it be placed as a trust fund, but he should see to it that it is so placed, and not permit the bank to make him its individual creditor, and then be permitted to say, after the failure of the bank, "I did not intend that the deposit should be in my individual name," or that, "You made a mistake and placed it to my credit, notwithstanding I told you to place it to the credit of the estate."

The probate court ignored the great preponderance of the evidence, and the decree is reversed, and the cause is remanded.

Reversed and remanded. All the Justices concur, except DOWDELL, C. J., not sitting.