### BARNES et al. v. CLARK et al.

#### 4 Div. 737.

Supreme Court of Alabama.

Dec. 21, 1933.

H. R. McClintock, of Dothan, for appellants.

E. C. Boswell, of Geneva, for appellee.

KNIGHT, Justice.

Appeal by W. L. Barnes, and the sureties on his guardianship bond, from a decree of the probate court, upon final settlement by the said Barnes of his guardianship account with his wards. The court held the guardian responsible and accountable for loss of funds, which he, as such guardian, had on deposit in the Dothan National Bank at the time this bank failed.

It is to be noted that the evidence showed, without dispute, that the appellant had made separate deposit of the funds in the bank to his credit as guardian for the respective wards. The evidence shows no commingling of the funds with any of the guardian's individual funds, but in each instance the deposit showed the trust character of the funds, and the name of the beneficiary. The amount on deposit in each case was small, less than a hundred dollars, and, at the time the bank failed, the amount due each of the wards was as follows: To his credit as guardian of Ina Mae Clark, $64.41; to his credit as guardian of William R. Clark, $87.-03; to his credit as guardian of Charles H. Clark, $94.47; and to his credit as guardian of Mary Eunice Clark, $97.07. We make no mention of the amount due Homer R. Clark, as the record shows that this ward at the time of the settlement was of full age, and the guardian had made settlement with him.

It also appears that the receiver of the Dothan National Bank had paid to the guardian 40 per cent. of the respective amounts, and the latter had duly accounted therefor to the court. The court, on final settlement, held the guardian liable for the remaining 60 per cent. of the respective amounts, with interest thereon from January 18, 1928, when the deposits were first made.

The guardian and his sureties have appealed from said decree, and they here take the position that, under the circumstances of the case, the guardian was not derelict in duty in placing said funds with the bank, and that he should not have been charged, on his settlement, with said losses.

It appears, without dispute, from the evidence in the case, that the guardian, on January 18, 1928, deposited in said Dothan National Bank to the credit of each of his said wards the sum of $92.08, and that, during the time intervening between the first deposit, January 18, 1928, and the failure of the bank, which occurred in January, 1930, he deposited a number of other items to the

credit of the respective wards, but such deposits were very small, only a few dollars in each instance.

It also reasonably appears from the evidence that said funds constituted all the moneys or available cash of said minors; and it also appears that the moneys were deposited, with an agreement that the bank would pay interest thereon at the rate of 4 per cent. From time to time, the guardian drew on the funds to purchase necessaries for his wards, and it does not appear that there was any fixed period of time for the money to remain in the bank, and, we take it, the accounts were subject to check at any time.

It is evident to our mind that the court below construed the transaction with the bank as time deposits, or loans, and held the guardian liable to account for the same upon the theory that the said transactions must be treated as loans made by the guardian to the bank, without taking or requiring such security as the law in such cases required. Section 8149, Code. However, as above indicated, the guardian takes the position that the deposits were temporary; that taking interest thereon, for the benefit of the minors exclusively did not effect to change the transactions from mere temporary deposits to time deposits, or loans.

■ No lack of diligence, good faith, honest dealings, and sound judgment, so far as the record discloses, are imputable to the guardian in the selection of the bank as the depository of the trust funds. It fully appears that at the time the money was placed with the Dothan National Bank that bank was regarded as sound and solvent, and had through the years, down to the time it closed its doors, enjoyed fully the confidence of the community it served. And we may say here that the fact that this bank failed, standing alone, cannot serve to impute either bad faith or a lack of prudence to the guardian in selecting it as the depository of his trust funds.

As we have above pointed out, the funds in the hands of the guardian were small, hardly sufficient to provide for the immediate necessities of the minors, to say nothing of meeting possible contingencies, should any arise requiring the immediate resort to such funds.

■ This court is firmly committed to the proposition that a guardian may make temporary deposits of trust funds in a responsible bank, acting in good faith and with discretion, and will not be held to liability for such funds in the event of a failure of the bank. Gibbons et al. v. Norton et al., 225 Ala. 650, 145 So. 131; First National Bank v. Weaver, 225 Ala. 160, 142 So. 420, 421; Chancellor v. Chancellor, 177 Ala. 44, 58 So. 423, 45 L. R. A. (N. S.) 1, Ann. Cas. 1915C, 47; Bates v. Jones, 224 Ala. 82, 139 So. 242.

■ Of course, to come within the protection of the above-stated rule, the guardian must not deposit the funds in his own name, nor commingle the account with his own in the bank, for, if he does, his liability will become absolute, and he cannot escape liability by reason of good faith, prudence, or judgment, nor upon the fact that he may have disposed of his own funds in the same way. Chancellor v. Chancellor, supra; In re Estate of Arguello, 97 Cal. 196, 31 P. 937; Commonwealth v. McAlister, 28 Pa. 480; Williams v. Williams, 55 Wis. 300, 12 N. W. 465, 13 N. W. 274, 42 Am. Rep. 708; Naltner v. Dolan, 108 Ind. 500, 8 N. E. 289, 58 Am. Rep. 61; Corya v. Corya, 119 Ind. 593, 22 N. E. 3.

■ The authorities seem to be well-nigh universal that the deposit must be made in such way as to preserve its trust character on the books of the bank. This requirement was fully and faithfully observed and carried out by the guardian in the instant case.

While it appears from the evidence in the cause that the guardian contracted for interest on the deposit, this fact did not, of itself, convert the demand deposit into a time deposit, or a loan (and we may here state that the little interest items were duly credited to the account of each of said minors).

This particular question has heretofore engaged the attention of courts in other jurisdictions, as well as of this court.

This precise question came before the Pennsylvania Supreme Court some years ago, and that court held, in the case of Estate of William W. Law, a minor, 144 Pa. 499, 22 A. 831, 832, 14 L. R. A. 103: "A deposit is where a sum of money is left with a banker for safe-keeping, subject to order, and payable, not in the specific money deposited, but in an equal sum. It may or may not bear interest, according to the agreement. While the relation between the depositor and his banker is that of debtor or creditor simply, the transaction cannot in any proper sense be regarded as a loan, unless the money is left, not for safe-keeping, but for a fixed period at interest, in which case the transaction assumes all the characteristics of a loan." There is nothing in the case at bar tending in the slightest to show that the money was not payable on demand, or otherwise beyond the control at any time of the guardian.

There was a time in this state when a depositor, who had not stipulated for interest, would be entitled, in case of insolvency, to preference of payment over all other creditors, but the constitutional provision, which gave rise to such preferential treatment to depositors who had not stipulated for interest, was heretofore repealed.

And this court, in the case of Limestone County v. Montgomery, Superintendent, 226

Ala. 266, 146 So. 607, 609, made the following pronouncement with reference to deposits, where interest was agreed to be paid: "Applying the test of the difference between a loan and a deposit, though interest is paid, as asserted in Schumacher v. Eastern Bank & Trust Co. (C. C. A.) 52 F.(2d) 925, it is clear that the funds of the county were deposited and not loaned, when placed on general deposit, subject to check at will, with no time limit or conditions as to payment, though provision is made for interest on balance. Divide County v. Baird, 55 N. D. 45, 212 N. W. 236, 51 A. L. R. 296."

Of course, if it were held in this case that the placing of the minors' money with the Dothan National Bank was done under such circumstances as to stamp the transaction as a time deposit or a loan, and that this was done without requiring such security of the bank as the law, section 8149, Code, required, then it would follow that the guardian and his sureties, would be liable for any loss resulting from such conduct. Lee v. Lee, 67 Ala. 406.

■ The guardian had in his hands the several small amounts of money due his wards. It was all the money, confessedly, they owned. He could not know just what occasion might arise requiring the expenditure of the same on his wards. In our case of Thompson v. Thompson, 92 Ala. 545, 9 So. 465, 466, in which the question of charging the guardian with the payment of interest on uninvested moneys of the ward was involved, this court observed: "It appears that the ward is in the insane asylum, and that it was necessary for the guardian to keep on hand a sum of money sufficient to meet the current and contingent expenses. In estimating the amount on which the guardian should be charged interest, the judge of probate should deduct from such cash balance a reasonable amount for this purpose, and also allow the guardian a reasonable time in which to make the investment. * * * The guardian should be charged with interest only on the balance after making such deduction. * * * "

So then we conclude that the guardian was not derelict in not investing the money. Was he derelict in placing the money in bank to be used by him for the minors as occasions might arise and demand? How was he to keep the money, for it was necessary that it be kept where it could be used as the necessities of the case or contingencies might arise? We think these questions are satisfactorily answered in the case of Estate of William W. Law, a minor, supra, where it is said: "Banks of deposit are a recognized necessity in the commercial world. A trustee who would continuously keep for any considerable length of time a large sum of money about his person or in his house, rather than deposit it for safe-keeping in a solvent and reputable bank or trust company, where all the precautions may be exercised for its safety, might justly be regarded as derelict in duty. No one would be accredited with the exercise of common prudence who would keep his own money in this way; and a trustee, as we have said, is held generally for such care and diligence as an ordinarily prudent man would exercise in the conduct and management of his own business."

We have carefully read and considered the entire record, and have reached the conclusion that, under the evidence in this case, which is without dispute, the court below committed error in charging the guardian with the losses sustained by reason of the failure of the Dothan National Bank, and in taxing the cost against the guardian, and for that error the judgment of the probate court must be, and is, reversed, with direction to proceed in accordance with this opinion.

■ In reaching this conclusion we have not lost sight of the rule obtaining here that a presumption should be indulged in favor of the correctness of the conclusion of the trial judge, who sees and hears the witnesses, when there is conflict in the evidence, but in this case there is no conflict, and therefore nothing upon which to base this general presumption. Wright v. Price, 226 Ala. 591, 147 So. 886.

Reversed and remanded.

ANDERSON, C. J., and THOMAS and BROWN, JJ., concur.